UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRENT BLAGG as personal representative for the Estate of Amy Blagg, BRENT BLAGG as guardian and next friend of K.B. and personal representative for the Estate of K.B., BRENT BLAGG as guardian and next friend of T.B.,** ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 09-CV-0703-CVE-FHM<br>**BASE FILE** |
| and ) ) | Consolidated with:<br>Case No. 09-CV-0708-CVE-FHM |
| **ANNA MARIE HOBBS, as surviving spouse and personal representative of the Estate of Alfred Eugene Hobbs; ANNA MARIE HOBBS, in her individual capacity; and HAROLD TEDFORD,** ) ) ) ) ) ) ) | (consolidated with 11-CV-0271-CVE-FHM)<br>and<br>Case No. 10-CV-0502-CVE-FHM |
| Consolidated Plaintiffs. ) | |
| v. ) ) | |
| **JERRY LINE, an individual and as principal/employer, and CHARLIE DAVIS STRONG, JR., an individual and agent/employee, WP OIL AND GAS, LLP, as principal/employer, and PETRON ENERGY, INC., as principal/employer,** ) ) ) ) ) ) ) ) | |
| Defendants / Consolidated Defendants. ) ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Jerry Line's Motion for Summary Judgment and Brief in Support (Dkt. # 127); Defendants WP Oil and Gas, LLC and Petron Energy, Inc.'s Motion for Summary Judgment with Brief in Support (Dkt. # 132); Defendant Jerry Line's Amended Motion for Summary Judgment and Brief in Support (Dkt. # 41 in case no. 09-CV-708-CVE-FHM); Defendant Jerry Line's Motion for Summary Judgment and Brief in Support (Dkt.

# 35 in case no. 10-CV-502-CVE-FHM); and Defendant WP Oil and Gas, LLC and Petron Energy, Inc.'s Motion for Summary Judgment with Brief in Support (Dkt. # 38 in case no. 11-cv-271-CVE-FHM).[1]  Defendants seek summary judgment on each plaintiff's claims.  Plaintiffs ask the Court to deny defendants' motions for summary judgment based on genuine disputes as to material facts requiring a jury trial.

**I.**

On May 9, 2009, Charlie Davis Strong, Jr. was driving a black 1955 Chevrolet owned by Jerry Line.  The car had been driven to Kansas for a car show, and Strong and Brent Radke were driving the car back to Oklahoma after the car show.  Dkt. # 148-1, at 3-4.  Before the trip, Strong and Radke agreed that Strong would drive the car to the car show and Radke would drive during the return trip.  Dkt. # 37-1, at 3, Case No. 10-CV-502-CVE-FHM.  Strong believed that he had been "hired" by Line to drive the car to Kansas.  Id. at 9 (Strong told the police officer investigating the accident that he was "hired to drive some vintage cars to the car show . . .").  Line had transported two other classic cars to the car show, and Cliff Lamb and Scott Morgan assisted with driving the cars to and from the car show.  On the return trip, Strong, Radke, Line, Lamb, and Morgan stopped at My Place, a restaurant in Cherryvale, Kansas.  Id. at 4.  According to Line, they "had a few beers" at My Place.  Id.  Line purchased steak dinners for Radke, Strong, Lamb, and Morgan.  Dkt. # 132-1, at 16.  Strong also had a few shots of liquor, in addition to a few beers, and there is no dispute that Line was aware that Strong was "doing shots."  Dkt. # 127-1, at 7-8 (Line testified that Strong admitted to having a couple of shots of liquor and beers at My Place and Line was aware of this

---

[1]  Unless otherwise noted, all references to docket numbers refer to filings in case no. 09-CV-703-CVE-FHM.

before leaving My Place); Dkt. # 42-4, at 4, Case No. 09-CV-708-CVE-FHM (Line saw Strong fall down due to his intoxication and Alma Oram heard Line tell Radke to "get [Strong] to the car"). Strong admits that he has a problem with alcohol and that he has been convicted approximately 10 times for driving under the influence of alcohol. Dkt. # 148-2, at 20. He also claims that Line was aware of these facts because he had personally told Line about his prior convictions. Id.

Line claims that he told Strong that he wanted Radke to drive the car and that he did not want Strong to drive because he appeared to be intoxicated. Dkt. # 127-1, at 8. Strong and Radke recall that Line told Radke to drive the car from My Place because Strong had been drinking. Dkt. # 127-1, at 29; id. at 36. Certain witnesses also heard Line tell Radke to drive the 1955 Chevrolet from My Place. Id. at 50 (Lamb heard Line instruct Radke to drive the vehicle from My Place); id. at 56-58 (Linda Hammer states that Line was "adamant" that Strong was not to drive home but she did not see Strong and Radke get in the vehicle); id. at 65 (Taina Copeland heard Line state that Strong was not to drive the vehicle on the return trip). One witness heard Line instruct Radke to drive the car but without providing any reason or any restrictions on Strong driving the vehicle, and another witness cannot recall if Line gave any instructions to Strong and Radke as to who should drive the vehicle from My Place. Dkt. # 148-1, at 2 (Connie Steen heard Line tell Radke to drive the car but he did not restrict Strong from driving); Dkt. # 158-1, at 77 (Alma Oram did not hear Line give any driving instructions to Strong or Radke, but she did hear Line tell Radke to put Strong in the vehicle after Strong fell down). In a recorded statement to police, Line seemed surprised that Strong was intoxicated on May 9, 2009, and he did not advise the officer that he instructed Radke to drive the car. Id. at 5. Instead, Line stated that he heard Radke announce that he would drive home and he does not mention any instructions to Radke or Strong concerning who should drive from My Place.

Id. During an interview with the Oklahoma Highway Patrol, Radke stated that he was driving when he and Strong left My Place, as the result of a prior agreement with Strong; he did not mention any instructions from Line concerning who should drive from My Place. Dkt. # 148-2, at 15.

Radke and Strong left My Place with Radke driving the 1955 Chevrolet. The vehicle's radiator hose ruptured and Radke had to stop for repairs. Dkt. # 132-1, at 61. Strong insisted on driving the vehicle after the repairs were completed, and Radke initially refused to get in the car. Id. at 62; id. at 85. Radke and Strong fought, but Radke eventually got in the car. Strong drove the car after the repairs, and he did not stop until they completed the return trip. However, while driving south on Highway 169, Strong entered the northbound lane to pass a vehicle in front of him and attempted the pass without sufficient room to avoid an oncoming vehicle. The oncoming vehicle, driven by K.B., swerved onto the shoulder of the northbound lane to avoid a collision. K.B. lost control of the vehicle and crossed into the southbound lane, and collided head-on with a vehicle driven by Alfred Hobbs. Numerous fatalities and injuries resulted from the accident,[2] but Strong claims that he was unaware of the accident and he did not stop. Line also claims that was not made aware of the accident until he was notified by the Oklahoma Highway Patrol that a vehicle he owned was involved in the accident.[3]

---

[2]  K.B., Amy Blagg, and Alfred Eugene Hobbs were killed; T.B., Anna Marie Hobbs, and Harold Tedford were injured.

[3]  Line was interviewed by Oklahoma Highway Patrol Trooper Loftis, but he claims that he was not aware that Loftis was recording the conversation. Dkt. # 158, at 5. Assuming that Line was unaware that the conversation was being recorded, this does not detract from the relevance of his statements to Loftis and Line has cited no authority suggesting that his statements are inadmissible.

Defendants claim that Strong "volunteered" to drive the 1955 Chevrolet to and from the car show, and that Strong was not acting as an employee or agent of any defendant at the time of the accident. Dkt. # 132, at 3. However, Strong was paid $225 by Petron on May 8, 2009, and there is a dispute as to whether the payment for work already performed or if it was an advance for work yet to be performed. Dkt #-132-1, at 74. Timothy Edwards, a pump-overseer for Petron, states that Strong occasionally worked for Petron as an independent contractor, and that the May 8, 2009 check was for work performed between May 4 and 8, 2009. Id. at 72-73. Petron does not have records to show that Strong actually worked that week, and does not maintain records of time worked by contract labor such as Strong. Dkt. # 148-2, at 10. Strong testified in his deposition that Line asked him to lie about the purpose of the check and to say that the check was for car parts instead of work. Id. at 11-12. Strong expected to get paid for his services on May 9, 2009, and he viewed the May 8, 2009 check as a "draw . . . so [he] would have money that weekend." Id. at 8.

Line is the sole owner of WP and WP operated about 30 wells in Wagoner County, Oklahoma until November 2008. Dkt. # 132-1, at 4. Petron acquired a 75 percent interest in the working interest in the wells in November 2008, and WP continued to supervise and manage the wells in exchange for a 25 percent interest in the wells.[4] Id. at 34. Line was authorized to write checks on a Petron account, but he was required to submit invoices to Petron to pay for services and Petron would place enough money in the checking account to cover the payment. Dkt. # 161-1, at 2-4. Petron did not keep track of hours for contract labor, and Line would advise Petron of the

---

[4]   WP and Petron jointly assert all arguments in their motion for summary judgment, and they do not raise any argument that either WP or Petron may not be a proper party. The Court will not make this argument for them and will view them jointly for the purpose of this ruling only.

5

number of hours worked by a laborer and request that funds to pay the laborer be placed into the checking account. Id. at 5. Line admits that he had no personal checking account in 2009. Dkt. # 132-1, at 35.

Blagg has asserted a negligence claim against Strong and alleges that Strong was acting as the employee or agent of Line, WP, and/or Petron at the time of the accident. Dkt. # 122, at 4. Blagg alleges that Line negligently entrusted the 1955 Chevrolet to Strong and Radke when Line knew or should have known that both men were intoxicated or unable to drive safely. Id. at 4-5. Anna Maria Hobbs has filed two cases alleging claims against different defendants. In case no. 09-CV-708-CVE-FHM, Hobbs alleges a negligence claim against Strong and respondeat superior and negligent entrustment claims against Line. Hobbs filed a second case, case no. 11-CV-271-CVE-FHM, alleging negligence claims against Strong, WP, and Petron, and alleging claims of respondeat superior, negligent entrustment, and fraudulent transfer against Line. The Court directed Hobbs to file a single amended complaint alleging all of her claims from both cases. In her amended complaint, Hobbs alleges a negligence claim against Strong, a negligent entrust claim against Line, and claims of respondeat superior and joint venture against Line, WP, and Petron. Dkt. # 178. Harold Tedford, a passenger in the Hobbs' vehicle at the time of the accident, has filed his own lawsuit alleging a negligence claim against Strong and respondeat superior and negligent entrustment claims against Line. Dkt. # 1, Case No. 10-CV-502-CVE-FHM. After these cases were filed, Strong pleaded guilty to three counts of second degree murder in the Nowata County District Court, Oklahoma.[5]

---

[5]     Strong is currently in the custody of the Oklahoma Department of Corrections. He received concurrent sentences of 25 years per count, but he will serve the final 13 years of his sentence on probation. Dkt. # 132-1, at 97.

6

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Line argues that he cannot be held liable for Strong's negligence because Strong was not acting as an agent or employee of Line when the accident occurred and, even if he was an agent or employee, Strong was acting outside the scope of his authority by violating Line's instruction that Radke was to drive the vehicle. Line also argues that he did not entrust the vehicle to Strong because he expressly forbade Strong from driving, and he cannot be held liable for negligent entrustment. WP and Petron argue that Strong was not their employee at any time on May 9, 2009, that he was merely an independent contractor who occasionally performed work for them, and that they cannot be held liable for torts committed by an independent contractor. Even if the Court were to find that Strong was an employee of WP or Petron on May 9, 2009, WP and Petron claim that Strong was acting outside the scope of his employment by operating the vehicle in violation of Line's instructions.

Under the doctrine of respondeat superior, an employer is liable for the "willful torts of an employee acting within the scope of employment in furtherance of assigned duties." MTG Guarnieri Mfg., Inc. v. Cloutare, 239 P.3d 202, 214 (Okla. Civ. App. 2010) (citing Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158 (Okla. 2008)). Respondeat superior imposes vicarious liability on an employer for the negligence of an employee. Sisk v. J.B. Hunt Transp., Inc., 81 P.3d 55, 58 (Okla. 2003). "This rule rests on the premise that, when exercising delegated authority, the employee stands in complete control of the employer." Nelson v. Pollay, 916 P.2d 1369, 1374 n.23 (Okla. 1996). "An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer." Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd., 867 P.2d

8

1241, 1245 (Okla. 1993); see also Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1163 (Okla. 2009) ("Under the theory of respondeat superior, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.").

Negligent entrustment is a separate basis for tort liability under Oklahoma law in some automobile accident cases. Pierce v. Oklahoma Property & Cas. Ins. Co., 901 P.2d 819, 823 (Okla. 1995). The owner of a vehicle may be liable if he "allows another driver to operate the automobile when the person knows or reasonably should know that the other driver is careless, reckless and incompetent, and an injury results therefrom." Green v. Harris, 70 P.3d 866, 868 (Okla. 2003). To prevail on a claim of negligent entrustment, a plaintiff must show that the driver's careless operation of the vehicle was the cause of his or her injuries. Guinn v. Great West Cas. Co., 2010 WL 4811042 (W.D. Okla. Nov. 19, 2010); Clark v. Turner, 99 P.3d 736, 743-44 (Okla. Civ. App. 2004). Evidence of the owner's knowledge that the driver entrusted with driving the vehicle routinely drove recklessly or under the influence of drugs or alcohol is relevant to whether the owner acted negligently. Green, 70 P.3d at 869-70; McManus v. Gourd, 873 P.2d 1060, 1062-63 (Okla. Civ. App. 1994). A plaintiff is not required to show an agency or employment relationship between the owner and the person entrusted to drive the vehicle, because this is not an element of a negligent entrustment claim. See Guinn, 2010 WL 4811042, at *6 (stating elements of negligent entrustment claim under Oklahoma law).

There is a genuine dispute of material fact as to whether Strong was an employee of Line, WP, and/or Petron on May 9, 2009 and, if Strong was an employee, whether he was acting within the scope of his employment at the time of the accident. Plaintiffs have produced sufficient evidence

to support an inference that Strong was serving as an employee or agent of Line, WP, and/or Petron on May 9, 2009. In particular, Line wrote a check to Strong on May 8, 2009, drawn on a Petron account. Neither Line nor Petron kept records concerning the hours worked by Strong, and there is conflicting evidence as to the purpose of the May 8, 2009 check. Dkt. # 132-1, at 26-27. Edwards, Petron's supervisor for oil and gas wells located in Wagoner County, states that the May 8, 2009 check was for Strong's work in the oil fields between May 4 and May 8, 2009. Id. at 72-73. The Oklahoma Highway Patrol trooper who interviewed Strong after the accident recorded that Strong "stated that he was hired to drive some vintage cars to the car show . . . ." Dkt. # 148-2, at 7. Strong also testified in his deposition that Line asked him to lie about the purpose of the check. Viewing the evidence in a light most favorable to plaintiffs, there is a genuine dispute concerning the purpose of the May 8, 2009 check, and there is sufficient evidence from which a fact finder could infer that the check was for Strong's services as a driver on May 9, 2009. Based on the fact that Strong was possibly paid by Line using a Petron check for his services on May 9, 2009, it is also possible that Strong was an agent or employee of WP and/or Petron on the day of the accident.

Plaintiffs must also produce sufficient evidence that Strong was acting within the scope of his employment at the time of the accident in order to survive summary judgment on their claims of respondeat superior. Line claims that he was aware of Strong's drinking and that he expressly told him that Radke was to drive the vehicle for the remainder of the return trip. Dkt. # 127-1, at 7-8. Several people heard Line tell Radke to drive the vehicle after leaving My Place and that Strong was not to drive the vehicle. Id. at 50 (affidavit of Lamb); id. at 56 (deposition testimony of Linda Hammer); id. at 63-64 (deposition testimony of Taina Copeland). Loftis stated in an affidavit that Line "allowed [Radke] to drive the 55 Chevy from the tavern back to the Oklahoma State line."

10

Dkt. # 148-2, at 7. This is consistent with Line's and Radke's statements to Loftis during a recorded interview. Line recalled that Radke stated that he would drive the vehicle and that Line agreed to let Radke drive, but Line did not mention that he expressly told Radke to drive or that he forbade Strong from driving. Dkt. # 148-1, at 5, 7, 16. Strong's deposition testimony suggests that Radke was driving the car to Oklahoma as part of a prior agreement between Strong and Radke. Dkt. # 127-1, at 15-16. This calls into question whether Line revoked Strong's authority to drive the vehicle after stopping at My Place. There is also evidence that Strong was so intoxicated when the alleged instruction was given that he had to be placed in the vehicle by Line and Radke. This calls into question whether any verbal instruction could have been understood by Strong and whether Line took adequate measures to ensure that Strong would not drive the vehicle after leaving My Place. Under Rule 56, the Court must view the evidence in a light most favorable to the plaintiffs, and the Court finds that there is a genuine dispute as to whether Line revoked Strong's authority to drive the vehicle upon leaving My Place. There is no dispute that Strong was otherwise authorized to drive the vehicle on May 9, 2009, and there is a genuine dispute as to whether he was acting as an agent or employee of defendants at the time of the accident.

WP and Petron argue that it is irrelevant whether Strong was acting within the scope of his authority, because he was an independent contractor and not an employee whose negligence is attributable to them. The mere fact that WP and Petron now claim that Strong was an independent contractor is not dispositive of this issue. An independent contractor is "one who agrees to perform a certain service without the control, supervision, or direction of his employer in all matters connected with the performance of the service except the result or product of the work." Bouziden v. Alfalfa Elec. Co-op., Inc., 16 P.3d 450, 455 (Okla. 2000). An employer or principal is not

responsible for the incidental negligence of an independent contractor, because he has no right to control the manner in which the independent contractor carries out his duties. World Pub. Co. v. Smith, 161 P.2d 861, 863 (Okla. 1945). Oklahoma courts have identified eleven factors that may be relevant to determine whether a person should be considered an employee or an independent contractor:

> (a) the nature of the contract between the parties, whether written or oral;
>
> (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent;
>
> (c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others;
>
> (d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (e) the skill required in the particular occupation;
>
> (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;
>
> (g) the length of time for which the person is employed;
>
> (h) the method of payment, whether by the time or by the job;
>
> (i) whether or not the work is part of the regular business of the employer;
>
> (j) whether or not the parties believe they are creating the relationship of master and servant; and
>
> (k) the right of either to terminate the relationship without liability.

Express Bus, Inc. v. Oklahoma Employment Sec. Comm'n, 157 P.3d 1180 (Okla. Civ. App. 2007) (quoting Page v. Hardy, 334 P.2d 782 (Okla. 1958)).

The summary judgment record is wholly insufficient to determine as a matter of law whether Strong was an employee or independent contractor of WP and/or Petron. There does not appear to have been a written contract between Petron or WP and Strong, and this is some evidence that Strong was not an employee of WP or Petron. However, Line apparently believed that he had authority to control the manner of Strong's performance, because he claims that he revoked Strong's authority to drive the vehicle. The Court also notes that Petron and WP lack records concerning Strong's employment with Petron, and many of Petron's assertions about the nature of Strong's work for Petron are not supported by any evidence.[6] Strong was not paid for completing a particular job but, instead, was paid by the hour. This suggests that he was more like a part-time employee than an independent contractor hired to complete a particular job. The Court cannot resolve Strong's employment status as a matter of law based on the summary judgment record, and this is also a genuine dispute of material fact that must be resolved by a jury.

The Court also finds that there is a genuine dispute as to material facts precluding summary judgment on plaintiffs' negligent entrustment claims. It is undisputed that Line owned the 1955 Chevrolet that Strong was driving. There is also sufficient evidence from which a factfinder could conclude that Strong's negligence was the cause of plaintiffs' injuries. Line argues that he did not entrust the vehicle to Strong because he instructed Radke to drive the vehicle from My Place and that he revoked Strong's authority to drive the vehicle for the remainder of the return trip. Dkt. # 127, at 21-11. However, the Court has already found that there is a genuine dispute as to whether

---

[6] Petron claims that its "contractors" used tools rented or owned by Petron, but that it did not control the manner of their work. Case No. 09-CV-708-CVE-FHM, Dkt. # 57, at 4. However, there is no evidence to support these assertions.

Strong was authorized to drive the vehicle at the time of the accident, and the precludes a ruling in Line's favor on plaintiffs' negligent entrustment claims.

**IT IS THEREFORE ORDERED** that Defendant Jerry Line's Motion for Summary Judgment and Brief in Support (Dkt. # 127) and Defendants WP Oil and Gas, LLC and Petron Energy, Inc.'s Motion for Summary Judgment with Brief in Support (Dkt. # 132) are **denied**.

**IT IS FURTHER ORDERED** that Defendant Jerry Line's Amended Motion for Summary Judgment and Brief in Support (Dkt. # 41 in case no. 09-CV-708-CVE-FHM), Defendant Jerry Line's Motion for Summary Judgment and Brief in Support (Dkt. # 35 in case no. 10-CV-502-CVE-FHM), and Defendant WP Oil and Gas, LLC and Petron Energy, Inc.'s Motion for Summary Judgment with Brief in Support (Dkt. # 38 in case no. 11-cv-271-CVE-FHM) are **denied**.

**DATED** this 30th day of January, 2012.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT